HARTZ, Circuit Judge,
dissenting:
I respectfully dissent from the majority opinion’s affirmance of the jury’s verdict in favor of Ms. McInerney on her retaliation claim. The majority opinion holds that there was sufficient evidence that Nelli retaliated against Ms. Mclnerney by exercising her discretion to terminate Ms. McInerney when she did not return to work after expiration of her leave. I disagree. My disagreement is ambivalent because the verdict baffles me. There was a great deal of evidence that Mortimer discriminated against Ms. McInerney because of her gender, yet the jury rejected that discrimination claim. Perhaps it was confused when it granted Ms. McInerney a verdict on the retaliation claim, which, even under the majority opinion’s analysis, rested on minimal evidence. But we have no power to correct what may have been an improper verdict on the discrimination claim by affirming an improper verdict on the retaliation claim.
To begin with, I disagree that Nelli fired Ms. Mclnerney. Ordinarily, an employer has the right to set the duties of its employee. If the employee does not wish to perform those duties and therefore does *727 not appear for work, the employee has abandoned the job; the employer has not terminated the employee. It does not matter that the employee would like to remain an employee on her own terms— either by performing other duties or by extending her leave. We said as much in Lauck v. Campbell County, 627 F.3d 805, 810 n. 2 (10th Cir.2010) (employee “abandoned” job when he “refused to report to work after his transfer”). Our opinion in Wells v. Colorado Dep’t of Transp., 325 F.3d 1205 (10th Cir.2003), is not to the contrary. First, the opinion does not expressly address whether Wells was terminated or simply abandoned her job. The issue was not disputed. Second, the facts were rather different from our case. When Wells’s leave expired, her boss terminated her without asking her to return to work. See id. at 1212. Here, in contrast, Ms. Mclnerney refused to return to work when asked.
To be sure, Ms. McInerney may have a retaliation claim even if one adopts the above view of the distinction between abandonment and termination. If, as the majority opinion states, Nelli retaliated against Ms. McInerney by refusing to exercise her authority to extend Ms. McIner-ney’s leave, then Ms. McInerney has a cause of action. (Indeed, if her leave should have been extended, Ms. McInerney would have a constructive-discharge claim. An employee who abandons her job may be said to have been constructively terminated if she quit because the employer imposed an improper duty on her. See Lauck, 627 F.3d at 812. In this case the improper duty would have been that Ms. McInerney return to work.) In my view, however, the record does not support the contention that Nelli had the authority to extend Ms. McInerney’s leave to the relevant extent.
There is no dispute that United’s stated policy was that an employee who failed to return to work after expiration of leave was deemed to have abandoned her job. Ms. McInerney acknowledged this policy during her trial testimony. See J.App. at 1689-90. Perhaps Nelli had authority to ignore that policy and grant Ms. McInerney the lengthy leave of absence she desired; but the evidence does not support a finding that she had that authority. Although the majority opinion states two grounds upon which the jury could find that the stated policy was not generally applied and that Nelli could extend Ms. Mclnerney’s leave after its expiration, I am not persuaded.
One ground was that Nelli actually did extend Ms. Mclnerney’s leave. Although Ms. Mcinerney’s leave expired on March 25, 2006, Nelli waited until March 31 to deem her to have resigned. Nelli waited the extra week, however, to be sure that Ms. Mclnerney, whom she had not heard from, was not going to accept a position as a Customer Service Representative, which might provide another 90-day leave of absence. There is a great difference between (1) the authority to defer termination to be sure that the employee was aware of her options and had decided not to return to work, and (2) the authority to grant an employee a leave of absence of many weeks or months. Although the jury could properly have found that Nelli had the prior authority, that finding could not possibly have supported the jury’s verdict, which awarded hundreds of thousands of dollars in damages. It would have availed Ms. Mclnerney nothing for Nelli to have extended the leave a few extra days to remove any iota of doubt that Ms. Mclnerney did not plan to return to work as required. What there was no evidence of is that Nelli had the authority to grant what Ms. Mclnerney wanted — an extended leave to care for her child. By conflating *728 the two types of authority, the majority opinion imposes liability on United simply because it allowed Nelli a little wiggle room in enforcing company policy. We do not serve the workers of this country by issuing decisions that encourage employers to be rigid in their employment decisions.
The other ground upon which the majority opinion relies is the evidence that another worker had not been terminated for failure to come to work until he had been absent for two months. The only evidence on this matter was the following testimony by Ms. Mclnerney on cross-examination:
Q. And, you certainly weren’t aware of anybody who didn’t show up to work and was not let go?
A. Actually, there was a supervisor that that happened to, and it was a ramp supervisor, Marcus — I’ll think of his last name in a minute. But he didn’t show up to work for six weeks, and nothing was done to him for two months, no contact, no nothing.
Q. Was he eventually fired?
A. After two months of no contact, yes.
Id. at 1692.
This testimony cannot support an inference that Nelli could have granted the leave desired by Ms. Mclnerney. First, there was no evidence that Nelli, or even anyone in the same position as Nelli, had anything to do with the two-month delay. Second, Marcus was never permitted to return to work, as Ms. Mclnerney wished to do after being granted additional leave. Third, and perhaps most important, the testimony is so bereft of detail that one cannot determine whether the Marcus situation bears any material similarity to Ms. Mclnerney’s. The gist of the majority opinion’s theory is that Nelli’s purported reliance on United’s policy is pretext because that policy had not been applied to Marcus. We have held, however, that pretext cannot be shown by evidence that other employees were treated differently than the plaintiff unless those employees were similarly situated; and the burden was on Ms. McInerney to prove similarity. See Hysten v. Burlington N. & Santa Fe Ry. Co., 296 F.3d 1177, 1182 (10th Cir. 2002). Absent that proof, one can only speculate that the Marcus episode supports the majority opinion’s theory; and we cannot affirm a verdict based on speculation.
Accordingly, with respect and reluctance, I dissent.